IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VESUVIUS USA CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of the U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:26-cv-01382<br><br>**COMPLAINT** |

# COMPLAINT

1. Plaintiff Vesuvius USA Corporation ("Plaintiff") is an importer of merchandise into the United States. Plaintiff paid duties assessed and collected by U.S. Customs and Border Protection ("CBP"), including duties imposed pursuant to executive orders invoking the International Emergency Economic Powers Act ("IEEPA"), which the United States Supreme Court subsequently held to be unlawful and which Defendants thereafter terminated.

2. Beginning in February of 2025, the President invoked IEEPA as purported authority to issue a series of executive orders imposing new and substantial tariffs ("IEEPA Tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff imports merchandise.

3. Plaintiff paid the IEEPA Tariffs assessed on its imported merchandise.

4. On February 20, 2026, the U.S. Supreme Court held that "the terms of IEEPA do not authorize tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. The Supreme Court further confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction of" this Court. *Id*. at 5 n.1.

6. Accordingly, given the unlawfulness of the IEEPA tariffs as determined in *Learning Resources*, Plaintiff seeks a full refund from Defendants of all IEEPA Tariffs Plaintiff has paid to the United States.

## PARTIES

7. Plaintiff Vesuvius USA Corporation is a corporation organized under the laws of the State of Illinois, with its principal place of business at 5510 77 Center Drive, Suite 100, Charlotte, NC 28217. Plaintiff is engaged in the importation of certain products including: sensors for high temperature measurements, raw materials for the manufacture of refractory products and equipment, refractory bricks, filters, linings and tooling for the steel & foundry industries.

8. Defendant CBP is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for administering and enforcing the customs laws of the United States and for assessing and collecting duties on imported merchandise.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the disputed tariff duties and is a proper defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION

11. This Court has subject-matter jurisdiction under 28 U.S.C.§ 1581(i) and 28 U.S.C. § 2631(i) because the suit "arises out of" a statute "providing for" "revenue from imports and tonnage," "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other

than the raising of revenue," and / or "administration and enforcement with respect to" such revenue or tariffs. *Learning Resources*, slip op. at 5 n.1.

12. Exhaustion of administrative remedies—i.e., filing a protest with CBP and challenging its denial—is not required for Plaintiff's challenge to the lawfulness of the IEEPA Tariffs because "Customs is powerless to perform any active role in the determination of" the legality "of the assessment[s]" levied under IEEPA. *Thomson Consumer Elcs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001); *see AGS Co. Automative Sol'ns v. U.S. Customs & Border Protection*, 2025 WL 3634261, at *3 (Ct. Int'l Trade Dec. 15, 2025).

13. This Court has all the powers in law and equity of a United States district court, including the authority to enter a money judgment and grant other appropriate relief in an action brought under 28 U.S.C. § 1585(i). 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).

14. Plaintiff has standing because it is an importer of record that paid the IEEPA Tariffs assessed and collected by CBP, which the Supreme Court has held unlawful. Plaintiff suffered a concrete financial injury as a result, and the relief sought would redress that injury.

## BACKGROUND

### I. The IEEPA Tariff Orders.

15. Beginning on or about February 1, 2025, the President declared national emergencies relating to drug trafficking from other countries and issued executive orders imposing additional duties on imports from Canada, Mexico, and China (the "Fentanyl Trafficking Tariffs"). Each of these orders cited IEEPA as the purported authority for the imposition of tariffs. The Fentanyl Trafficking Tariff orders include, as amended, among others:

16. **Executive Order 14193, as amended**: imposed an additional 25 percent ad valorem duty on imports from Canada in February 2025, later increased to 35 percent in August 2025. *Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our*

*Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025), as amended by *Exec. Order No. 14231, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 11,785 (Mar. 11, 2025), and *Exec. Order No. 14325, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 37,957 (Aug. 6, 2025).

17.  **Executive Order 14194, as amended:** imposed an additional 25 percent ad valorem duty on imports from Mexico. *Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

18.  **Executive Order 14195, as amended:** imposed an additional 10 percent ad valorem duty on imports from China, later increased to 20 percent in March 2025 and reduced to 10 percent in November 2025. *Exec. Order No. 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025), as amended by *Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025), and *Exec. Order No. 14357, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 50,725 (Nov. 7, 2025).

19.  On April 2, 2025, the President declared a national emergency relating to trade deficits and imposed worldwide tariffs on nearly all U.S. trading partners through Executive Order 14257 (the "Worldwide Reciprocal Tariffs"). That order established a 10 percent universal baseline tariff with higher, country-specific rates. Citing IEEPA as the purported authority for the imposition of tariffs, the Worldwide Reciprocal Tariff orders include among others:

20.  **Executive Order 14257:** imposed worldwide tariffs, including a 10 percent universal baseline rate and additional country-specific rates. *Exec. Order No. 14257, Regulating*

*Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025).

21. **Executive Order 14259 and 14266:** increased the tariff rate applicable to imports from China to 125 percent. *Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025); *Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 15, 2025).

22. **Executive Order 14298, 14334, and 14358**: reduced the tariff rate applicable to imports from China to 10 percent. *Exec. Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China,* 90 Fed. Reg. 21,831 (May 21, 2025); *Exec. Order No. 14,334, Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China,* 90 Fed. Reg. 39,305 (Aug. 14, 2025); *Exec. Order No. 14,358, Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China,* 90 Fed. Reg. 50,729 (Nov. 7, 2025).

23. The President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS") in these orders, requiring importers to report new tariff codes on the custom entries to CBP for affected merchandise.

**II.    CBP's Collection and Liquidation of IEEPA Tariffs.**

24. CBP is charged with the assessment and collection of duties, including the IEEPA Tariffs. *See* 19 U.S.C. §§ 1500, 1502.

25. When merchandise enters into the United States, the importer files entry documentation with CBP identifying the applicable HTSUS classifications. For merchandise

subject to the IEEPA Tariffs, importers were required to declare the relevant Chapter 99 provisions in addition to other applicable HTSUS classifications.

26. Typically, the importer of record pays an estimated duty at entry based on its customs declaration, which asserts a value, country of origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP reviews the declaration and may inspect the merchandise.

27. CBP then fixes final appraisement by confirming the final value, classification, duty rate, and total duties owned. *See* 19 U.S.C. § 1500.

28. After determining the final duties, CBP "liquidates" the entry and notifies the importer of record whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b). "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

29. Unless extended, liquidation must occur within one year of entry. *See* 19 U.S.C. § 1504(a). CBP typically liquidates entries on an automatic liquidation cycle 314 days after the date of entry and will post a notice on its website. *See* 19 C.F.R. § 159.9.

30. CBP may extend the statutory liquidation period for additional one-year periods upon a showing of good cause, subject to a three-year cap on total extensions, and may also suspend liquidation as required by statute or court order. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1), (a)(2), (d), (e).

31. Following liquidation, an importer generally has 180 days to file an administrative protest with CBP to request reliquidation. *See* 19 U.S.C. § 1514.[1] However, where CBP acts in a purely ministerial capacity (*i.e.*, without discretion) in imposing a duty, Federal Circuit has held

---

[1] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

that the resulting liquidation is not protestable. *Id.*; *see Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

32. Plaintiff paid IEEPA Tariffs on its imported merchandise. As of the filing of this Complaint, at least some of Plaintiff's entries subject to IEEPA Tariffs have liquidated.

33. Under Federal Circuit precedent, Plaintiff likely cannot obtain relief through administrative protest because CBP assessed and collected the IEEPA Tariffs in a ministerial capacity pursuant to the aforementioned executive orders implemented through Chapter 99 of the HTSUS.

34. But this Court has repeatedly held that it has the authority to order reliquidation of entries affected by unlawful duties: 28 U.S.C. § 2643(c)(1) grants this Court the power to issue "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." For example, in *AGS Co. Automotive Soutions. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS*"), a three-judge panel confirmed this Court's authority to reliquidate entries subject to IEEPA Tariffs. 2025 WL 3634261, at *3 (holding that "the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties'" (quoting *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)).

35. Moreover, the Government is "judicially estopped" from opposing reliquidation of entries with respect to which the IEEPA Tariffs were collected. *AGS*, 2025 WL 3634261, at *2. The Government has "made very clear" in multiple "related cases" that it "will not object to the [c]ourt ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful." *Id.* (quoting government filings); *see, e.g.*, *Princess Awesome,*

*LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025) (making this representation).  When the government makes a representation as to its position on reliquidation in order to convince a court to rule in a particular way, it is "judicially estopped from taking a contrary position regarding the CIT's authority to order reliquidation."  *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

### GROUNDS FOR RELIEF

**I.      The Supreme Court has held the IEEPA Tariffs Unlawful.**

36.     On April 14, 2025, several companies filed an action in this Court challenging the legality of certain IEEPA Tariff orders.  *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2).

37.     On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the Government from collecting the IEEPA duties at issue in that case.  The Government appealed that decision to the Federal Circuit, which stayed this Court's order and injunction and ordered expedited briefing and oral argument.

38.     Sitting *en banc*, the Federal Circuit affirmed on August 29, 2025, the CIT's holding that the challenged IEEPA duties are unlawful.  *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

39.     In a separate lawsuit brought by other importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort.  *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).  The Government appealed that decision to the U.S. Court of Appeals for the D.C. Circuit, but before appellate argument, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources* and consolidated the cases for oral argument on November 5, 2025.

40. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA do[es] not authorize tariffs." *Learning Resources*, slip op. at 20.[2] That decision thus holds that *all* IEEPA Tariffs unlawful.

41. On the same day, the President issued an executive order providing that the "additional ad valorem duties imposed pursuant to IEEPA" under specified prior executive orders "shall no longer be in effect" and "shall no longer be collected," thereby formally terminating all tariffs imposed by the Government under IEEPA, including the Fentanyl Trafficking Tariffs and the Worldwide Reciprocal Tariffs. *Exec. Order No. 14,389, Ending Certain Tariff Actions,* 91 Fed. Reg. 9437 (Feb. 20, 2026).

## II. Plaintiff Paid IEEPA Tariffs.

42. Given the Government's repeated representations that it would not oppose reliquidation if the IEEPA tariffs were held unlawful, CBP was allowed to and did continue to collect duties imposed under the unlawful IEEPA Tariff Orders while the *V.O.S. Selections* litigation and related cases were pending.

43. On February 22, 2026, CBP announced that such duties "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[3]

---

[2] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

[3] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

44. Plaintiff's IEEPA-affected merchandise was entered into the United States under HTSUS provisions, including the Chapter 99 special provisions implementing the IEEPA Tariffs.

45. Plaintiff paid IEEPA Tariffs on numerous entries prior to the termination of the unlawful IEEPA Tariff Orders.

46. As of the filing of this Complaint, at least some of Plaintiff's entries subject to IEEPA Tariffs have liquidated.

47. Plaintiff seeks relief for all IEEPA Tariffs it has paid to the United States under the unlawful IEEPA Tariff Orders, including refunds with interest as provided by law.

## COUNT I
### THE IEEPA TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

48. Plaintiff incorporates the preceding paragraphs by reference.

49. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and affirmed the Federal Circuit's decision upholding this Court's merits ruling in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025). The Supreme Court held that the President had no authority under IEEPA, 50 U.S.C. § 1701 et seq., to impose tariffs.

50. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. As the Supreme Court explained, "[n]one of IEEPA's authorities includes the distinct and extraordinary power to raise revenue" via tariffs. *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 16. IEEPA "does not" "embrace[] the power to impose tariffs." *Id.* at 16.

51. The IEEPA Tariff Orders unlawfully purport to impose duties and modify the HTSUS solely under IEEPA and cannot be retroactively justified by reference to any other source of authority.

52. In moving the Federal Circuit to stay this Court's judgment in *V.O.S. Selections*, the Government confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025). The Government is judicially estopped from taking a contrary position now. *See AGS*, 2025 WL 3634261, at *2; *Sumecht*, 923 F.3d at 1348.

53. This Court is bound by the *Learning Resources* holding that all of the IEEPA Tariffs were unlawfully collected. The Court should order refunds of all IEEPA Tariffs paid by Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that this Court:

a) order CBP to reliquidate any entries liquidated with IEEPA Tariffs to exclude the IEEPA tariffs;

b) order CBP to liquidate all unliquidated entries subject to IEEPA Tariffs without the IEEPA Tariffs;

c) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA Tariffs, with interest as provided by law;

d) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant such other and further relief as this Court deems proper.

| | |
|---|---|
| Dated: March 3, 2026 | Respectfully submitted,<br><br>/s/ *Samantha Sewall*<br>Nick Harper<br>Samantha Sewall<br>Connor P. Mui<br>Luke J.P. Wearden<br><br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC 20036-4504<br>(202) 955-8500<br><br>NHarper@gibsondunn.com<br>SSewall@gibsondunn.com<br>CMui@gibsondunn.com<br>LWearden@gibsondunn.com<br><br>*Counsel for Plaintiff* |